Donald & Shirley Mae Rinehimer, d/b/a Riverview Block Company, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Earl R. Rinehimer, Respondents.

Argued December 18, 1981, before Judges Rogers, Blatt and Williams, Jr., sitting as a panel of three.

*Joseph P. Lenahan, Lenahan & Dempsey,* for petitioners.

*Morton J. Gordon,* with him *Thomas J. Sharkey* and *Joseph Ustynoski, Ustynoski, Sharkey and Marusak,* for respondent, Earl R. Rinehimer.

Opinion by Judge Williams, Jr., May 13, 1982:

Donald and Shirley Mae Rinehimer, doing business as the Riverview Block Company (Company), have appealed from an order of the Workmen's Compensation Appeal Board (Board) affirming the award of total-disability benefits to Earl R. Rinehimer (claimant).

The claimant was awarded benefits because of a totally disabling heart attack, which the referee found to have been caused by the claimant's physical efforts in the course of his employment with the Company. Before this Court, the appellants do not contest that

the claimant suffered a heart attack; but they assert that the heart attack was not shown to have the requisite causal connection with the claimant's employment. The appellants also argue that the claimant did not comply with the 120-day notice requirement set forth in Section 311 of The Pennsylvania Workmen's Compensation Act (Act),[1] and that, thus, the claim was completely barred.

As of April 3, 1976, the claimant was about 62 years old, and had been employed by the Company for approximately 18 years. His primary job was to drive a truck that transported ready-mix cement; although on some occasions he worked as a general laborer for the Company. On April 3, 1976, the claimant had no cement to deliver, and was engaged in the task of shoveling ashes, at the request of his employer and on the employer's premises. While so engaged, the claimant began to experience pain in his left shoulder and in his chest. According to the claimant, this pain would subside and recur after interim periods of rest. The claimant mentioned the pains to a fellow employee, but proceeded to complete his entire work shift of April 3rd. After having the following day off, the claimant returned to work on April 5, 1976, and worked every day thereafter until April 10, 1976, which would prove to be his last day of work.

On April 10, 1976, the claimant, while removing chutes from his cement truck during a delivery, once again experienced pain in his left shoulder and in his chest. According to the claimant, the pain on that occasion was more severe than the prior episode, and was accompanied by a "cold sweat." The claimant completed his work shift for April 10th, and told no one at the Company about his physical experience that day. The following day, April 11, 1976, was another

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §631.

day off for the claimant. While he was at home that day, the claimant again had an attack of pain in his chest. This episode induced him to consult a doctor.

On April 12, 1976, the claimant was examined by Dr. Robert Campbell, a specialist in family medicine. Based on his examination of the claimant, and the history provided by the claimant, Dr. Campbell concluded that his patient had suffered a heart attack or was in the process of having a heart attack. Consequently, the doctor had the claimant admitted to a hospital, on April 12th. The claimant remained in the hospital until April 30, 1976; and was re-hospitalized from June 20 through June 26, 1976.

The same day that the claimant was first admitted to the hospital, April 12, 1976, his wife telephoned the president of the Company and told him about her husband's physical condition. But, the only information communicated by the wife to the president was that the claimant had been hospitalized and that he "had a heart infarction."

On December 10, 1976, the claimant filed a claim petition alleging, in effect, that he had been disabled by a heart attack suffered on April 10, 1976. The employer's answer to the petition included a denial that the injury was work-related, and a denial that proper notice was served.

At the hearing before the referee, there was a conflict of testimony as to whether the claimant's heart attack was related to his employment. The claimant's medical witness, Dr. Campbell, testified that the heart attack he diagnosed on April 12, 1976, was caused by the claimant's physical exertions at work on April 3 and April 10, 1976. The employer's medical witness, Dr. Milton J. Goldstein, testified that he was unable to discover any causal relationship between the claimant's work activities and the heart attack. According to Dr. Goldstein, the claimant's adverse coronary epi-

sodes were due to an underlying, preexisting coronary disease. Dr. Campbell did not disagree that the claimant had the preexisting disease.[2]

It is well settled that where there is a conflict of medical opinion, it is for the referee as fact-finder to determine which is more credible, which is entitled to more weight, and which to adopt. *Stegmaier Brewing Co. v. Workmen's Compensation Appeal Board,* 50 Pa. Commonwealth Ct. 241, 412 A.2d 697 (1980). Thus, in the instant case, it was within the referee's province to accept the opinion of the claimant's medical witness, over the opinion of the employer's medical witness, as to the cause of the claimant's heart attack. Yet, that notwithstanding, there exists in this case the question of whether the claimant's right to compensation must fail because of the Act's notice-of-injury provisions.

Section 311 of the Act provides in part as follows:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf . . . shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, *and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.* (Emphasis added.)

Section 311 further provides that:

[I]n cases of injury resulting from ionizing radiation *or any other cause* in which the nature

---

[2] The fact that a claimant had a preexisting coronary disease does not preclude compensation where, for example, a claimed-for heart attack is the result of work-related aggravation of the underlying coronary condition. *E.g., City of New Castle v. Workmen's Compensation Appeal Board,* Pa. Commonwealth Ct. , 441 A.2d 803 (1982).

of the injury *or its relationship to the employment is not known to the employe,* the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury *and its possible relationship to his employment.* (Emphasis added.)

In the case at bar, both the referee and the Board concluded that the claimant had provided his employer with adequate and timely notice. As we view the record before us, such a conclusion is not sustainable.

Before the referee, the sole evidence going to the issue of notice was the claimant's wife's telephone call of April 12, 1976: informing the Company's president that the claimant had been hospitalized and "had a heart infarction." According to the referee, and the Board, that telephone message satisfied the Act's notice-of-injury requirements. Such a conclusion ignores the express terms of Section 312 of the Act, which prescribes the information to be contained in a notice of injury. Section 312 states, in part here pertinent, that:

The notice referred to in section three hundred and eleven *shall* inform the employer that a certain employe received an injury, described in ordinary language, *in the course of his employment* on or about a specified time, at or near a place specified. (Emphasis added.)[3]

The telephone message from the claimant's wife did not tell the employer, or even suggest, that the claimant's heart attack was work-related. In short, that message did not inform the employer, as is required by Section 312, that the injury occurred "in the course of" the claimant's employment. For the claimant's wife to announce simply that her husband had been

---

[3] 77 P.S. §632.

hospitalized with a "heart infarction" did not, in the evidenced circumstances of this case, serve to inform the employer that the infarction had anything to do with the claimant's job. We must conclude, therefore, that the wife's telephone message did not constitute notice sufficient to satisfy Section 311 of the Act.

At no time prior to the filing of the claim petition, which occurred almost 8 months after the claimant's heart attack, did the claimant, or anyone else on his behalf, inform the employer of any asserted nexus between the heart attack and the claimant's work activities. Such must be our conclusion given the record before us. Nor is there any record basis for charging the employer with an actual knowledge which would have been a substitute for the lack of timely and adequate notice from the claimant. Accordingly, we must hold that, on the record before us, the referee and the Board erred in concluding that the claimant met the 120-day notice requirement of Section 311 of the Act.

Although the record at bar does not permit a conclusion that the employer received notice sufficient to satisfy the 120-day notice requirement, our decision in that respect does not dispose of this case. *E.J.T. Construction, Inc. v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct. 492, 408 A.2d 226 (1979). As Judge BLATT observed in *E.J.T. Construction,* "[t]he second sentence of Section 311 of the Act clearly provides that, when the relationship of the injury to the employment is not known to the employee, the 120-day period does not begin to run until the employee either knows or should know of such a relationship." *Id.* at 495, 408 A.2d at 228.

In the instant case, as in *E.J.T. Construction,* the referee failed to make any finding whatsoever as to when the claimant knew or should have known of the causal relationship between his employment and his heart attack. Indeed, the record here, like that in

*E.J.T. Construction*, is devoid of any evidence on that issue. Thus, in the instant case, as in *E.J.T. Construction*, we must remand the matter so that the referee can make relevant findings concerning when the notice period began to run.

ORDER

AND Now, the 13th day of May, 1982, the above-captioned case is hereby remanded to the Workmen's Compensation Appeal Board, with a direction to further remand the matter to the referee for proceedings consistent with the foregoing opinion.

Judges MENCER and PALLADINO did not participate in the decision in this case.