City of Philadelphia, Petitioner *v.* Workmen's Compensation Appeal Board (Paul Fred Erlink), Respondents.

Submitted on briefs June 6, 1983, before President Judge CRUMLISH, JR. and Judges DOYLE and BARBIERI, sitting as a panel of three.

Alan J. Davis, City Solicitor, with him Thomas B. Erekson, Deputy City Solicitor, Steven M. Levin, Chief Assistant City Solicitor, and Kevin Gallagher, Law Clerk, for petitioner.

Paul J. Drucker, for respondent, Paul Fred Erlink.

OPINION BY JUDGE BARBIERI, November 9, 1983:

The City of Philadelphia (City) appeals here from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's award, pursuant to Section 306(c) of The Pennsylvania Workmen's Compensation Act (Act),[1] of specific loss benefits to Paul Fred Erlink (Claimant). We will remand.

On January 2, 1979 Claimant, a City fireman, filed a claim petition under the occupational disease provisions of the Act alleging therein that "high blood pressure caused by my occupation caused a right vein branch occlusion of the retina[,]" and that this injury resulted from "[e]xposure to heat, smoke, fumes, excitement, pressure, stress and adverse working conditions fighting fires for 22 years. . . ."[2] Claimant further alleged in his claim petition that the date of his injury was "May, 1977," that he orally notified his "superior officers and . . . co-workers" of his injury in May of 1977, and that he was totally dis-

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §513.

[2] Section 108(o) of the Act, added by Section 1 of the Act of October 17, 1972. P.L. 930, 77 P.S. §27.1(o), provides that

[t]he term "occupational disease" as used in this act, shall mean only the following diseases.

(o) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

abled as of May 29, 1978, the day after he left his job with the City. Several days of hearings were subsequently held on this claim petition, and at these hearings, Claimant produced unequivocal medical evidence, in the form of the testimony of Dr. Michael E. Starrels, an opthalmologist, and Dr. Thomas J. Leichner, Jr., Claimant's attending physician, indicating (1) that Claimant lost the vision in his right eye as of October 28, 1977, after a period of deterioration commencing in May of 1977, and (2) that this loss of vision was causally related to the hypertension Claimant experienced as a result of the nature of his job responsibilities. Thereafter, after the record was initially closed, and legal memoranda had been submitted, the referee, on his own motion, conducted another hearing to address the issue of notice, and at this hearing Claimant testified as follows:

Q. . . . .
Mr. Erlink what was the date of your injury, please?
A. I don't know the exact date—'77.
Q. According to your Petition, it was May of 1977. Does that sound right?
A. Yes, sir.
Q. Your Claim Petition indicates, in paragraph 12—, that notice was given to your superior officers and co-workers. Please give me the name of your superior officers and co-workers that you orally notified of your injury.
A. Frank Bruni, Captain.

. . . .

Q. What did you tell Captain Bruni?
A. I said I was having a little problem with my eye, and I thought I would let you know in case it went any farther—and, more or less take care of me a little bit.

. . . .

Q. Did you tell anybody else anything?

A. I asked the other two men if they could cover for me until I saw what was going on.

Q. You mean, by, ''saw what was going on,'' receive medical treatment?

A. Yes.

Q. Did you receive medical treatment?

A. I went, I think a few days later and the doctor explained it.

Q. And, did you then discuss it with your superior officers when you came back.

A. Yes.

After evaluating the evidence, the referee specifically found that Claimant was not totally disabled, but did award benefits to Claimant for the specific loss of his eye. In this decision the referee inexplicably found that Claimant had been ''disabled'' from May 29, 1978, even though the evidence of record indicates that Claimant's vision loss caused some disability beginning in May of 1977.[3] The referee also found as a fact that ''Claimant notified his supervisors of his injury in May of 1977.'' The referee failed, however, to make any specific finding as to when the injury or disabling occupational disease occurred. On appeal, the Board affirmed, noting in its decision that the question of notice was one of fact for the referee to resolve. The present appeal followed.

Before this Court, the City alleges, as it alleged below, that Claimant failed to present sufficient evidence to establish that the requisite statutory notice was given. Since we agree that the record before us

---

[3] From the eye loss viewpoint, disability occasioned thereby apparently began in May of 1977, but Claimant continued to report for work, presumably at full pay, until he left his employment in May of 1978.

is deficient in this regard, for the reasons that follow, we will remand.

Section 311 of the Act, 77 P.S. §631, provides, in pertinent part, as follows:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, . . . shall give notice thereof to the employer . . . within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the existence of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.[4]

In deciding when the one hundred twenty days' notice period begins to run in occupational disease cases we have held that "the notice period begins upon the conjunction of five elements: (1) knowledge or constructive knowledge (2) of disability (3) which exists, (4) which results from an occupational disease, and (5) which has a possible relationship to the employment." *Consolidation Coal Co. v. Workmen's Compensation Appeal Board (Mountain)*, 47 Pa. Com-

---

4 As is seen from the quotation in Footnote 2 above, the nature of the "injury" here is an "occupational disease" which the Act contemplates may develop insidiously over time without the knowledge of the employe that he is developing such an occupational disease.

monwealth Ct. 64, 69, 407 A.2d 134, 137 (1979). We have also held that the statutory notice, when given, must inform the employer that the injury was sustained in the course of the claimant's employment. *Rinehimer v. Workmen's Compensation Appeal Board*, 66 Pa. Commonwealth Ct. 480, 444 A.2d 1339 (1982). Certainly, the referee is required to make a finding of the date when the Claimant *"should have known* by exercise of reasonable diligence of the existence of disability and its relationship to Claimant's prior employment.*" Duquesne Light Co. v. Kraft*, 53 Pa. Commonwealth Ct. 92, 96, 416 A.2d 651, 654 (1980) (emphasis in original).

In the present case the only direct evidence of record concerning notice is the portion of Claimant's testimony quoted above. In this testimony, Claimant simply indicated that he informed his employer that he was having trouble with his eyes. There is no indication in his testimony, however, that Claimant notified his employer that his injury was work related as is required under Section 311, *Rinehimer,* or that Claimant was even aware of this relationship when he spoke to his supervisor, knowledge which would be necessary to trigger the commencement of the notice period. *Consolidation Coal.* Moreover, the referee totally failed to address himself to these critical issues.

Where, as here, the referee has failed to make any findings as to when the claimant knew or should have known of the causal relationship between his employment and his work-related injury, we have held that the proper course is to remand the case for findings on this issue even if "the record . . . is devoid of any evidence on that issue," *Rinehimer* at 486-87, 444 A.2d at 1341; *E.J.T. Construction, Inc. v. Workmen's Compensation Appeal Board,* 47 Pa. Commonwealth Ct.

492, 408 A.2d 226 (1979), and we shall follow that course of action here.

ORDER

Now, November 9, 1983, the order of the Workmen's Compensation Appeal Board dated May 21, 1981 at No. A-80056, is reversed and the record in this case is remanded to the Workmen's Compensation Appeal Board for further proceedings consistent with the opinion above. Jurisdiction relinquished.