505 A.2d 369

Walter Long, Petitioner v. Workmen's Compensation Appeal Board (Anchor Container Corporation), Respondents.

Submitted on briefs December 12, 1985, to Judges MacPhail and Doyle, and Senior Judge Kalish, sitting as a panel of three.

*Thomas F. McDevitt, Thomas F. McDevitt, P.C.,* for petitioner.

*Alan H. Ross, Thompson and Pennell,* for respondent, Anchor Container Corporation.

OPINION BY JUDGE MACPHAIL, February 21, 1986:

Walter Long (Claimant) appeals from the decision of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision denying Claimant benefits under Section 108 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §27.1.

Claimant was employed by Anchor Container Corp. (Employer) as a die mounter and press helper from April 1970 through June 7, 1979. After Claimant started work on June 7, 1979, he experienced chest pains, difficulty in breathing, nausea and dizziness. Claimant informed the assistant foreman he was dizzy and not feeling well and a co-worker took Claimant to the hospital. Claimant was placed in the coronary care unit. Dr. Neal Krouse, Claimant's treating physician, later diagnosed Claimant as suffering from anterior chest wall syndrome, bronchial asthma, chronic pulmonary disorder and severe anxiety.

Claimant filed a claim for workmen's compensation benefits under the occupational disease provisions of the Act. After several hearings, the referee found the following facts:

2. Most of Claimant's duties included using solvent in the process of cleaning rubber dies which were used in printing on corrugated cartons. In cleaning the dies Claimant would dip a scrubbing brush into the solvent and then rub it over the die. He would then blow the solvent off the die with an air hose. When using the air hose to clean the die, he would blow the material away from him, and it would blow back into his face. (N.T. January 12, 1981 at 15).

While working with the solvent, Claimant inhaled its fumes. (*Id.* at 45).

3. The referee accepts the testimony of Defendant's production manager, William Marshall, that the only solvents used by Claimant were 'Tower 399' and occasionally kerosene. Claimant did not use solvents which were ether based, nor did he use benzene or mineral spirits. (N.T. May 15, 1981 at 5-6).

. . . .

5. Claimant has failed to convince the referee that he suffered 'poisoning' due to his occasional exposure to kerosene, which is a hydrocarbon and thus a chemical included in Section 108(c) of the Pennsylvania Workmen's Compensation Act. Claimant has also failed to convince the referee that he suffered any other enumerated disease contained in Section 108(a) to (m) and (o) to (q) of the Act.

6. After Claimant started his work at about 7 a.m. on the morning of June 7, 1979, he experienced chest pains, had difficulty breathing, was nauseous and dizzy. (N.T. January 12, 1981 at 8). Claimant told the assistant foreman that he was not feeling well and was dizzy and a co-worker took Claimant to the Northeast Hospital. (N.T. January 12, 1981 at 9, 49). Claimant did not tell the assistant foreman or anyone else at work that he believed his illness was due to conditions at work.

. . . .

9. During the week of Claimant's hospitalization Claimant's wife spoke to Defendant's production manager, William Marshall. She told Marshall: 'Walter had a heart attack and the doctor didn't know when he would be back

at work'. Claimant's wife also told Marshall the following: ' . . . Walter would no longer be back to work because of the fumes'. (N.T. March 4, 1981 at 5-6). Claimant's wife did not inform Marshall or anyone else on behalf of defendant that her husband received an injury 'in the course of his employment on or about a specified time, at or near a place specified.' (See Section 312 of the Act).

. . . .

14. Following Claimant's hospitalization, Dr. Krouse's diagnosis was anterior chest wall syndrome, bronchial asthma, chronic pulmonary disorder and severe anxiety. (Krouse deposition at 13). Dr. Krouse prescribed various bronchodilating medications. . . .

. . . .

17. According to Dr. Krouse, Claimant's handling of solvents at work contributed to his disabling asthmatic condition. (Krouse deposition at 23). According to Defendant's medical expert, Dr. Jacob Woodrow Savacool, the solvents with which Claimant worked could have aggravated (not brought about) Claimant's asthmatic condition.

18. The referee has compared the testimony given by the two medical experts and finds that Claimant has proved that his exposure at work to 'Tower 399' and kerosene caused both his pulmonary/cardiac neurosis as well as an aggravation of his pre-existing asthmatic condition.

19. However, there is no evidence in this record that asthma anterior chest wall syndrome, pulmonary/cardiac neurosis, chronic pulmonary disorder or severe anxiety are dis-

eases the incidence of which is substantially greater in Claimant's occupation (as described above) than in the general population, as contemplated by Section 108(n) of the Act (the so-called 'catch-all' provision).

The referee dismissed Claimant's petition, concluding that (1) Claimant failed to carry his burden of proving that he suffered a disability caused by an "occupational disease" as defined in Section 108(n) of the Act, *as amended*, 77 P.S. §27.1(n), and (2) Claimant failed to satisfy the notice requirements of Section 311 of the Act, specifically concluding that "the telephone call by Claimant's wife to William Marshall informing him that Claimant would not be returning to work because of the fumes . . . does not satisfy the requirements of Section 312 of the Act." On appeal, the Board affirmed the referee's decision. An appeal to this Court followed.

Claimant contends here that (1) he more than satisfied the notice requirements of the Act and (2) although he brought his petition under Section 108 of the Act, Claimant is entitled to compensation under Section 301(c)(1) of the Act, *as amended*, 77 P.S. §411, arguing that the particular section of the Act under which a petition is brought is not material. We are mindful that where, as here, the party with the burden of proof did not prevail before the referee, our scope of review is limited to a determination of whether the findings of fact are consistent with each other and with the conclusions of law and whether they can be sustained without a capricious disregard of competent evidence. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977).

Section 311 of the Act, *as amended,* 77 P.S. §631 provides:

§631. *Knowledge of employer; notice of injury to employer; time for giving notice; exception*

Unless the employer shall have knowledge of the occurrence of the injury or unless the employee or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term 'injury' in this section means, in cases of occupational disease, disability resulting from occupational disease.

Section 312 of the Act, *as amended,* 77 P.S. §632 prescribes the information to be contained in a notice of injury as follows:

The notice referred to in section three hundred and eleven shall inform the employer that a certain employe received an injury, described in ordinary language, in the course of his employment on or about a specified time, at or near a place specified.

In the case at bar, both the referee and the Board concluded that Claimant had not provided Employer with adequate and timely notice. Before the referee, Claimant testified that he never told anyone at work

that "he felt his condition was due to fumes at work." (Hearing January 12, 1981, N.T. at 62). However, Claimant's wife testified that after Claimant's hospitalization, she called Mr. Marshall and told him that her husband "would no longer be back to work because of the fumes." (Hearing March 4, 1981, N.T. at 6). Whether the Employer received knowledge of the injury pursuant to Section 311 of the Act is a question of fact for the referee, *Van Patton v. Workmen's Compensation Appeal Board (Scott Paper Co.)*, 86 Pa. Commonwealth Ct. 538, 485 A.2d 541 (1984). Given that the Act's provisions are remedial in nature and are to be liberally construed, with borderline interpretations resolved in favor of the injured employees, *Builders Exchange, Inc. v. Workmen's Compensation Appeal Board*, 64 Pa. Commonwealth Ct. 94, 439 A.2d 215 (1982), we conclude that the referee and the Board erred as a matter of law in concluding that Claimant had not informed Employer that Claimant's disability was job related. *But see Rinehimer v. Workmen's Compensation Appeal Board*, 66 Pa. Commonwealth Ct. 480, 444 A.2d 1339 (1982) (wife's telephone message that claimant was hospitalized with a "heart infarction" did not serve to inform employer that the injury occurred "in the course of" claimant's employment).

We now turn to the issue of whether Claimant can succeed under Section 301(c)(1) of the Act, even though he brought his claim petition under Section 108 of the Act.[1] We believe that the case law is in Claimant's favor. In *Pawlosky v. Workmen's Compensa-*

---

[1] It is more accurate to state that Claimant had brought his claim petition under Section 301(c)(2) of the Act, which defines "injury", "personal injury," and "injury arising in the course of his employment" as including occupational diseases as defined in Section 108 of the Act.

*tion Appeal Board (Latrobe Brewing Co.)*, 81 Pa. Commonwealth Ct. 270, 473 A.2d 260 (1984), the claimant therein sought benefits for the aggravation of a pre-existing respiratory ailment (asthma) and amended his claim petition from one filed under Section 108(n) of the Act to one under Section 301(c)(1). Both the referee and Board dismissed the claim because the Claimant had failed to establish the incidence of his disease was substantially greater in his occupation than in the general population as required by Section 108(n) of the Act. We held that it was error to apply the standards of Section 108(n) to a claim brought under Section 301(c)(1) and that the referee's findings established that the Claimant had suffered a compensable injury as defined in Section 301(c)(1).

Similarly, in *Sandusky v. Workmen's Compensation Appeal Board (Chicago Bridge & Iron Co.)*, 87 Pa. Commonwealth Ct. 605, 487 A.2d 1019 (1985), the referee found that work-related gases and dusts aggravated the claimant's pre-existing respiratory disease (again asthma) to where the claimant was totally disabled, but the referee denied benefits because the claimant had not carried his burden, under Section 108(n), of establishing that his disability was substantially more prevalent in his occupation than that of the current population. The claimant moved to amend his petition to aver that he had suffered a compensable injury within the meaning of Section 301(c)(1), which petition was not ruled on. We noted that the referee's findings warranted the conclusion that the claimant would be entitled to compensation under *Pawlosky* if he had filed under Section 301(c)(1) of the Act. We remanded *Sandusky* to the Board for it to act on the claimant's petition to amend.

Here, although Claimant pleaded a case under Section 108(n) but did not prove it, the referee did find that work-related fumes aggravated Claimant's pre-existing asthmatic condition, thereby proving his case under Section 301(c)(1).

We are mindful of the fact that Claimant never amended his petition nor requested an amendment to proceed under Section 301(c)(1) of the Act. However, we do not believe that this omission is fatal. "It has long been the rule in workmen's compensation cases that the form of the petition filed is not controlling where the facts warrant relief, and that if a claimant is entitled to relief under any section of the Act, his petition will be considered as filed under that section." *Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Pecora)*, 82 Pa. Commonwealth Ct. 538, 540, 475 A.2d 972, 973 (1984). *See also* 34 Pa. Code §111.44(c), which provides that the referee or Board may grant any relief a claimant is entitled to under all the evidence, even though relief may have been sought under a different and inappropriate section.

As previously noted, the referee in this case found that work-related fumes aggravated Claimant's pre-existing asthmatic condition which would entitle Claimant to compensation for an injury under Section 301(c)(1) of the Act. "[T]he proper course in these circumstances of a claimant who has pleaded a case under Section 301(c)(2) and not proved it, but who has proved a case under Section 301(c)(1) and not pleaded it, is to vacate the order denying him compensation and to remand the record to the board for consideration of the case under Section 301(c)(1) and such relief as it deems appropriate." *Leed v. Workmen's Compensation Appeal Board (Quaker Alloy Casting Co.)*, 95 Pa. Commonwealth Ct. 124, 131, 504 A.2d 433,

439 (1986). Accordingly, we will vacate the order of the Board and remand for proceedings consistent with this opinion.

ORDER

The order of the Workmen's Compensation Appeal Board, dated November 1, 1984 at No. A-85982, is vacated and the record is remanded to the Board for further proceedings consistent with this opinion. Jurisdiction relinquished.