607 A.2d 327

**CITY OF ERIE, Pennsylvania, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SHANNON), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1992.

Decided April 10, 1992.

Petition for Allowance of Appeal Granted Aug. 18, 1992.

Gregory A. Karle, for petitioner.

Ted G. Miller, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

The City of Erie (employer) appeals from an October 3, 1990, decision of the Workmen's Compensation Appeal Board (board) which affirmed the referee's grant of compensation for total disability to Kenneth Shannon (claimant). We reverse.

Claimant, who was employed as a firefighter, suffered a heart attack while at home on December 4, 1980. Claimant was hospitalized and subsequently underwent open heart surgery on February 4, 1981. He has been disabled since that time.

Claimant sought compensation under The Pennsylvania Workmen's Compensation Act [1] (Act) by filing a claim petition on November 16, 1981, in which he alleged that his December 4, 1980 heart attack was related to some thirty

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1–1031.

years of exposure to smoke, fumes and exertion while employed as a firefighter with employer.

The referee, in a decision of November 29, 1984, made the following relevant findings of fact:

4. In support of his petition, the Claimant presented the testimony of George J. D'Angelo, M.D., Board certified in thoracic and cardiovascular surgery, who performed a quadruple bypass on Claimant on February 4, 1981. Dr. D'Angelo felt that the Claimant's condition was precipitated by his exposure to smoke and fumes and by an over-exertion while performing the duties of a firefighter.

5. The Claimant testified that he was told in December of 1980 while in the hospital that it was *possible* that his condition resulted from his firefighting. (Emphasis added.)

6. On December 5, 1980, the Claimant's sister called him in sick.

7. The Defendant presented the testimony of its fire chief. He testified that on December 5, 1980, the Claimant was called in sick. A few days later, as was required, a doctor's slip was presented by the Claimant's treating physician which only indicated that the Claimant was hospitalized and would be off from work for several months. In addition thereto, the fire chief testified that there was nothing in the records to indicate that the Claimant was claiming an injury in the course of his employment. To the best of his knowledge, no injury was reported and no reports were found in the Defendant's Fire Bureau's records. Your Referee accepts his testimony as fact.

8. After a careful scrutiny of the testimony, your Referee finds that no notice was given to the Defendant City within 120 days of the Claimant's injury as required by Section 311 of the Pennsylvania Worker's [sic] Compensation Act.

Based on these findings, the referee denied compensation and dismissed claimant's claim petition.

Claimant appealed to the board which remanded to the referee for further findings on the issue of notice. The board took issue with the referee's Finding of Fact No. 5, stating that it was an error of law for the referee to determine that the 120–day period for giving notice ran from when claimant's doctor told him in December, 1980 that his heart attack was possibly work-related. The board, citing *Rinehimer v. Workmen's Compensation Appeal Board*, 66 Pa.Commonwealth Ct. 480, 444 A.2d 1339 (1982), was of the opinion that the claimant need not give notice from the date that he has a suspicion that his injury was work-connected, but rather must give notice within 120 days of when he either knows or should have known that his injury is in fact work-related.

On remand, the referee made the following findings of fact in his decision of April 13, 1989:

2. The Claimant further testified that while he was hospitalized a deputy chief and other fire fighters visited him. The deputy chief knew that he had suffered a heart attack. The Claimant further testified that in December of 1980 his treating physician indicated to him that it was possible that the heart attack was related to his employment. However, the first time he definitely knew that the heart attack was work related was when his attorney informed him that George J. D'Angelo, M.D. was of the opinion that the heart attack was work related. This was after the Claim Petition was filed. Your Referee accepts his testimony as fact.

3. In further support of his Petition, the Claimant presented the testimony of a fire fighter with the City of Erie. He stated that he visited the Claimant often in the hospital and would relay information to the fire chief. He further stated that he told the chief that tests show that the Claimant had a heart attack. Your Referee accepts his testimony as fact.

. . . .

6. Taking into consideration all the testimony in the record, your Referee finds that the Claimant's heart

attack was causally related to his employment as a fire fighter, during which time the Claimant was exposed to smoke, fumes and exertion.

7. Taking into consideration all the testimony in the record, your Referee further finds as fact that the Claimant was first told by a medical practitioner that, in fact, his injury was work connected, when said information was relayed to the Claimant by his attorney, after the Claimant's Claim Petition had been filed. Therefore, proper notice was given by the Claimant to the Defendant City.

The referee concluded that the claimant had met his burden of proving an injury in the course of his employment with employer and ordered employer to pay claimant compensation for total disability, unpaid medical bills and to reimburse claimant for those medical bills paid by him which were related to his injury. Employer was further ordered to reimburse claimant's counsel for the bill of costs paid by counsel.

Employer appealed to the board alleging that the referee erred as a matter of law in concluding that claimant met the notice requirements of Section 311 of the Act.[2] The board affirmed the referee, relying on the rationale expressed in its first opinion on the issue of notice. This appeal by employer followed.

■ The issues raised by employer on appeal are whether the board misinterpreted Section 311 of the Act and whether the referee capriciously disregarded competent evidence.[3]

Section 311 sets forth the notice required to be given to the employer by an employee seeking compensation as follows:

**2.** 77 P.S. § 631.

**3.** Both parties presented evidence in this case. Therefore, the capricious disregard standard does not apply, and our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether there is substantial evidence in the record to support the findings of fact. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its *possible* relationship to his employment. The term 'injury' in this section means, in cases of occupational disease, disability *resulting from* occupational disease.[4]

77 P.S. § 631 (emphasis added).

Section 312 of the Act provides:

The notice referred to in section three hundred and eleven shall inform the employer that a certain employe received an injury, described in ordinary language, *in the course of his employment* on or about a specified time, at or near a place specified.

77 P.S. § 632 (emphasis added).

▆ As the terms "injury" and "notice" are defined by these sections, an employer must not only know or be informed of an injury, but must also know or be informed

---

**4.** Section 108 provides as follows:
   The term 'occupational disease,' as used in this act, shall mean only the following diseases.
      . . . .
   (*o*) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, *caused by* extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, *arising directly out of the employment* of any such fireman.
   77 P.S. § 27.1(*o*) (emphasis added).

that the injury is work-related. Therefore, if an employer has neither actual knowledge nor notice of a *compensable* injury, compensation must be barred. *Miller v. Workmen's Compensation Appeal Board (Atlas Powder Co.)*, 78 Pa.Commonwealth Ct. 22, 466 A.2d 787 (1983). Accordingly, we must decide whether employer had actual knowledge that claimant had suffered a compensable injury and, if not, when the 120–day period for giving notice to employer began.

■ Claimant argues that employer had actual knowledge of his heart attack based on his sister calling him in sick, a note from his doctor, conversations claimant had with various members of the fire department while in the hospital, and claimant's filing of a claim for sickness and accident benefits.[5] While we agree that each of these events notified employer of claimant's injury, a review of the record reveals that claimant never informed employer, through these or any other means, that claimant's heart attack was or may have been, related to his work. Without such a nexus between claimant's heart attack and his work activities, employer cannot be charged with actual knowledge. *McCullough v. Workmen's Compensation Appeal Board (Xerox Corp.)*, 96 Pa.Commonwealth Ct. 621, 508 A.2d 621 (1986).

In *Rinehimer* we held that claimant's wife's telephone call informing employer's president that claimant had had a heart infarction and had been hospitalized did not constitute notice sufficient to satisfy Section 311, because it did not inform employer that the infarction had anything to do with the claimant's job.[6] Likewise, we have held that although

5. The referee made no finding regarding "actual knowledge," but instead found claimant had given employer proper notice based on the board's position that the 120–day provision in Section 311 does not begin until a claimant knows that his or her injury is in fact work-related.

6. *Compare Long v. Workmen's Compensation Appeal Board (Anchor Container Corp.)*, 95 Pa.Commonwealth Ct. 242, 505 A.2d 369 (1984), (claimant's wife's telephone call informing employer's production manager that claimant had a heart attack and that he would no longer

an employer had actual knowledge of a claimant's injury through various contacts claimant had with employer subsequent to his injury, employer could not be charged with actual knowledge sufficient to obviate claimant's obligation to give notice where such contacts failed to suggest any nexus between his physical condition and his work activities. *Van Patton v. Workmen's Compensation Appeal Board (Scott Paper Co.)*, 86 Pa.Commonwealth Ct. 538, 485 A.2d 541 (1984). These cases are controlling here.

■ Claimant contends employer's actual knowledge of his injury, an "occupational disease" under Section 108(*o* ), combined with the presumption provided in Section 301(e) of the Act[7] is sufficient to satisfy the provisions of Section 311. However, the presumption provided in Section 301(e) was clearly intended to give claimants in specific occupations an evidentiary advantage in establishing one of the elements necessary to support an award (*i.e.*, the causal link between his injury and his employment), not to circumvent or replace the notice provisions of Section 311. *Pawlosky v. Workmen's Compensation Appeal Board*, 514 Pa. 450, 525 A.2d 1204 (1987). Therefore, although claimant would be entitled to a presumption that his heart attack was caused by his work for the purpose of supporting his claim, he is not entitled to such a presumption for the purpose of imputing actual knowledge on employer. Because claimant's suggested extension of the presumption provided by Section 301(e) is not supported by caselaw or the Act, we conclude employer did not have actual knowledge that claimant had suffered a compensable injury.

be back to work *because of the fumes* was sufficient to inform employer that claimant's disability was work-related).

7. Section 301(e) provides as follows:

If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

77 P.S. § 413.

■ Having found that employer did not have actual knowledge of claimant's injury, we must now determine when the 120–day period for giving notice began. We note initially that when the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921. Accordingly, the time for giving notice under Section 311, where an employer does not have actual knowledge of an injury, does not begin to run until

[T]he employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its *possible* relationship to his employment.[8]

77 P.S. § 631 (emphasis added).

■ This court interpreted Section 311 in *Bailey v. Workmen's Compensation Appeal Board,* 96 Pa.Commonwealth Ct. 599, 508 A.2d 393 (1986), and found that the 120–day notice period begins to run after the following five elements have been satisfied: 1) knowledge or constructive knowledge; 2) of disability; 3) which exists; 4) which results from an occupational disease; and 5) which has a possible relationship to the employment. Although *Bailey* acknowledges that these elements have been derived from occupational disease cases, we found them to be equally applicable to all cases under Section 311. *Id.,* 96 Pa.Commonwealth Ct. at 604, 508 A.2d at 395.

In this case, the first four elements set forth in *Bailey* have been met. With regard to the fifth element, the referee clearly found as a fact that claimant had been informed by his treating physician in December of 1980 that

8. The board's position that a claimant must give notice within 120 days of when he either knows or should have known that his injury is *in fact* work-related clearly misstates our position in *Rinehimer.* In *Rinehimer* we quoted *E.J.T. Construction, Inc. v. Workmen's Compensation Appeal Board,* 47 Pa.Commonwealth Ct. 492, 408 A.2d 226 (1979), which stated that, "the 120–day period does not begin to run until the employee either knows or should know of such a relationship." In *E.J.T. Construction,* the phrase "such a relationship" referred to the language of Section 311 which requires only knowledge of a *possible* relationship between a claimant's injury and his work, not a relationship in fact.

it was *possible* that his heart attack was work-related. Claimant's own testimony, which the referee found to be credible, establishes that he knew of a possible relationship between his heart attack and his employment in December of 1980.

Considering the referee's finding that claimant was aware of the possible relationship between his heart attack and his work in December of 1980, the clear and unambiguous language of Section 311 and the fact that claimant did not file a claim petition until November 16, 1981, the board committed an error of law in affirming the referee's decision of April 13, 1989.

Accordingly, we reverse.[9]

## ORDER

NOW, this 10th day of April, 1992, the order of the Workmen's Compensation Appeal Board, No. A89–1139, dated October 3, 1990, is reversed.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The majority erroneously deprives firefighters with more than four years of service of the presumption created by both Section 108 and Section 301 of the Pennsylvania Workmen's Compensation Act[1] (Act), by holding them to the same standards as other claimants in giving an employer notice of the work-relatedness of a heart attack.

Kenneth Shannon (Claimant) was employed by the City of Erie (Employer) as a firefighter for 30 years. On December 4, 1980, while at home, Claimant suffered a heart attack, subsequently underwent open heart surgery, and has been disabled ever since. While he never filed an incident report with the Employer stating that he suffered a

9. In light of our decision that claimant had not provided the city with timely notice that his injury was work-related, we need not address employer's second issue.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 1–1031.

heart attack, there is no dispute that Employer was aware that Claimant had suffered a heart attack due to phone calls made by his sister to Employer calling him in sick, a note from his doctor, knowledge of high-ranking fire department officials, and Claimant's filing of a claim for sick and accident benefits. None of those contacts, however, informed the Employer specifically that Claimant believed the heart attack to be work-related.

Sections 311 and 312 of the Act, 77 P.S. §§ 631 and 632, provide when and what type of notice a claimant must provide to an employer in order to perfect his or her claim. Section 311 provides that notice of a work-related injury must be given by the claimant within 120 days of the injury:

> Unless the employer shall have knowledge of the occurrence of the injury or unless the employe or someone in his behalf or some of the dependents or someone in their behalf shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows or by the exercise of reasonable diligence should know of the existence of the injury and its *possible* relationship to his employment. The term 'injury' in this section means in cases of occupational disease, disability *resulting from* occupational disease.

77 P.S. § 631.

Section 312 provides as to the content of the notice as follows:

> The notice referred to in section three hundred and eleven shall inform the employer that a certain employe received an injury, described in ordinary language, *in the course*

*of his employment* or about a specified time, at or near a place specified. (Emphasis added).

77 P.S. § 632.

To satisfy the requirement that notice has been given within the requisite 120 days that the injury was work-related, the notice must ordinarily set forth both the type of injury and that the injury is work-related. If such notice is not given within the prescribed time limit, then any claim for compensation is time barred. *Auto Service Councils of Pennsylvania, Inc. v. Workmen's Compensation Appeal Board (Compton),* 139 Pa.Commonwealth Ct. 466, 590 A.2d 1355 (1991).

In the case of firefighters with more than four years service, however, once an employer has actual knowledge of the heart attack, because of presumptions contained in the Act, the employer constructively receives the requisite notice required under Sections 311 and 312, including that the firefighter's heart attack was work-related.

Section 301(e) of the Act, 77 P.S. § 413, creates a rebuttable presumption that any occupational disease recognized by the Act was caused by the claimant's employment. That section provides:

If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

77 P.S. § 413.

Section 108 of the Act, 77 P.S. § 27.1(*o*), includes diseases of the heart and lung as an occupational disease. It provides that any heart and lung disease incurred by a firefighter with more than four years of service was caused by his or her employment. That section provides:

The term 'occupational disease' as used in this act shall mean only the following diseases.

. . . .

(*o*) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, *caused by* extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, *arising directly out of the employment* of any such fireman. (Emphasis added).

77 P.S. § 27.1(*o*).

Under the presumption created by these two provisions, the employer is constructively put on notice that until rebutted, the heart attack incurred by a firefighter is work-related.

The majority holds that this presumption is inapplicable in satisfying the requisite notice requirements contained in Sections 311 and 312 of the Act by holding that Sections 108 and 301 merely create an evidentiary advantage for the claimant by shifting the burden to the employer to establish that the heart attack was work-related. However, Sections 108 and 301 do more—they reverse one of the Act's key statutory presumptions that an injury or disease is presumed to be not work-related to one that certain injuries and diseases are presumed to be work-related, *ab initio*. By changing this statutory presumption, it makes work-relatedness a "you understood" situation once the employer receives notice that an employee incurred such an injury or disease, including heart attacks suffered by firefighters with more than four years of service.

In this case, the Employer had actual knowledge of the heart attack. Once the Employer was aware of that fact, and that the firefighter had more than four years of service, the Employer had constructive notice that the heart attack was work-related. Accordingly, I would affirm the Board's decision.

COLINS and FRIEDMAN, JJ., join in this dissent.