IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh and UPMC    :
Benefit Management Services, Inc.,  :
          Petitioners      :
                          :
          v.            : No. 29 C.D. 2018
                          : Submitted: May 4, 2018
Workers' Compensation Appeal  :
Board (Flaherty),               :
             Respondent    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY
SENIOR JUDGE PELLEGRINI             FILED: June 1, 2018

       The City of Pittsburgh (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board) reversing the Workers' Compensation Judge's (WCJ) decision and holding that Anne Marie Flaherty (Claimant) gave notice to Employer within 21 days of when she knew or should have known that her cancer was work-related. Because Claimant gave notice within 21 days, she was entitled to benefits from September 10, 2004, the date she left work due to her injury, as opposed to September 23, 2011, the date she filed her claim petition.

# I.

## A.

Claimant worked as an active firefighter for Employer for 16 years. In August 2004, she noticed a lump on her breast and had a mammogram, resulting in a diagnosis of breast cancer. A month later, she had a mastectomy. Because of that surgery, she was unable to continue her full duties as a firefighter. Her last official date of employment with Employer was September 9, 2004. It is undisputed that if Claimant had not been diagnosed with cancer, she would have continued working as a firefighter.

Effective July 7, 2011, the Workers' Compensation Act (Act)[1] was amended via Act 46 of 2011 (Act 46).[2] In Act 46, the General Assembly enacted Sections 108(r) and 301(f), creating a new occupational disease provision to provide a new presumption of compensable disability for firefighters who suffer from cancer.[3]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

[2] Act of July 7, 2011, P.L. 251. In his decision, WCJ David B. Torrey (Judge Torrey) found "as a matter of preliminary fact that Act 46 of 2011 (firefighters cancer presumption) was enacted on June 30, 2011." (Finding of Fact No. 7). Although not material to our disposition of this matter, we note that this preliminary finding was in error. Pursuant to its language, Act 46 of 2011 was effective immediately, meaning when it was approved by the Governor on July 7, 2011. (*See* House Bill 797; Regular Session 2011-2012, available at: http://www.legis.state.pa.us/cfdocs/billInfo/bill_history.cfm?syear=2011&sind=0&body=H&type=B&bn=797 (last visited May 8, 2018)).

[3] Specifically, Section 108(r) of Act 46 recognizes the occupational disease of "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer." 77 P.S. § 27.1(r). Section 301(f) provides, in relevant part, that:

**(Footnote continued on next page…)**

Claimant admits that sometime after Act 46's enactment, in the summer of 2011, she received a letter of distribution from her union informing her of the new firefighter cancer presumption law (Union Letter). That Union Letter led Claimant to question whether there was a connection between her job and her cancer. Because Claimant is unable to locate the Letter and cannot remember exactly when she received it, its exact date and contents are unknown. (*See* Reproduced Record (R.R.) at 63a-64a, 68a.)[4]

---

**(continued…)**

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. . . . Notwithstanding the limitation under subsection (c)(2) with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, claims filed pursuant to cancer suffered by the firefighter under section 108(r) may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease. **The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks**.

77 P.S. § 414 (emphasis added).

[4] At an October 27, 2011 hearing, Claimant testified that she came to discover or believe that her breast cancer may be related to her work "[n]ot that long ago you know really." (R.R. at 63a.) In response to the question, "No general time frame?" Claimant replied, "Yeah, I believe it was . . . That's all . . . ." (R.R. at 64a.) On redirect, the following exchange occurred:

**(Footnote continued on next page…)**

3

Following receipt of the Union Letter, on September 23, 2011, Claimant filed a claim petition providing notice to Employer of the possible connection between her work and her cancer. She sought payment of medical bills and full disability benefits from September 10, 2004, and ongoing. Notwithstanding, Claimant did not receive actual confirmation of the causal link between her cancer and occupation until several months thereafter – when she received a medical report from her oncologist, Dr. Lanie Francis (Dr. Francis), dated February 24, 2012.[5]

_____

**(continued…)**

> Q. Just to make it clear, did you receive a letter from the union this summer [2011] cluing you into a new firefighter cancer presumption law?
>
> A. Yes.
>
> Q. Is that letter what led you to exploring whether or not your occupational exposure resulted in your breast cancer?
>
> A. Yes.

(R.R. at 68a.)

[5] Claimant's testimony is consistent with her first receiving medical confirmation through Dr. Francis via the February 24, 2012 report. At a hearing held on October 27, 2011, Claimant denied that **any** of her doctors ever informed her of the possibility that her cancer was related to her work as a firefighter. (R.R. at 64a.) However, at an August 22, 2013 hearing, Claimant admitted that Dr. Francis told her during one appointment that her breast cancer could be related to occupational exposures as a firefighter. She could not remember when, what time, or even what year that conversation with Dr. Francis took place. (R.R. at 87a-88a.)

4

## B.

Following hearings, now-retired WCJ Linda Tobin (WCJ Tobin) circulated a decision on October 4, 2013, granting Claimant's claim petition. As pertinent, WCJ Tobin concluded that Claimant established direct exposure to a Section 108(r) carcinogen and that she was examined and found cancer-free repeatedly before and during her employment with Employer, and that she served more than four years in continuous firefighting duties. *See* Section 301(f) of the Act, 77 P.S. § 414. Determining that Claimant filed her claim petition within 300 weeks, WCJ Tobin concluded that Claimant was entitled to the presumption afforded under Section 301(f) of the Act, 77 P.S. § 414. Notwithstanding, WCJ Tobin also concluded that even in the absence of the statutory presumption, Claimant met her burden of proving by a preponderance of the evidence that her cancer was caused by her occupational exposure as a firefighter. WCJ Tobin then awarded Claimant benefits commencing from the last date of employment, September 9, 2004. Employer appealed to the Board.

Because Claimant's last date of employment was September 9, 2004, and she did not file her claim petition until September 23, 2011 – approximately 367 weeks thereafter – the Board held that Claimant was not entitled to the presumption that her cancer was caused by firefighting because she did not file her claim petition within 300 weeks of her last date of employment. *See* Section 301(f) of the Act, 77 P.S. § 414. The Board did agree, however, with WCJ Tobin that even in the absence of the presumption, Claimant met her burden of proving that her cancer and disability were caused by her occupational exposure as a firefighter.

5

The Board also determined that a remand was necessary because the WCJ did not render any findings as to when Claimant first discovered that her cancer was possibly related to her work as a firefighter or when she provided notice to Employer of the possible connection between her work and her cancer.[6] Specifically, the Board remanded the matter "for the WCJ to render findings and a determination [as to (1)] when Claimant first discovered that her cancer was **possibly related** to her work as a firefighter and [2] when she provided notice to [Employer] of the **possible connection** between her work and her cancer. [3] The WCJ shall thereafter reconsider her decision to award benefits as of September 9, 2004 . . . ."[7] (Board's Order dated April 8, 2015) (emphasis added). The Board's order did not authorize the reopening of the evidentiary record.

---

[6] At all times prior to this appeal, Employer has not disputed Claimant's entitlement to benefits but only that "[t]he WCJ erred as a matter of fact and law in awarding benefits and interest retroactive to September 2004, where Claimant did not provide notice of any alleged work-related injury until 2011." (Certified Record at No. 5, "Defendant's Appeal.") Accordingly, when remanding the matter to the WCJ, the Board "initially noted that [Employer] does not argue that Claimant should be barred from receiving compensation based on a failure to provide notice within 120 days of her injury. Rather, [Employer] appears to only be concerned with the WCJ's decision to award benefits retroactive to September 9, 2004 based on, when during the 120 day period, Claimant provided notice." (Board's Decision dated April 8, 2015 at 9.) Now, for the first time, and still not disputing Claimant's entitlement to benefits under Act 46, Employer contends that Act 46 cannot be applied retroactively to provide Claimant benefits at any time prior to its effective date. Because Employer failed to preserve this issue at all stages of the proceeding, the issue is waived.

[7] The Board's order also instructed the WCJ to "reconsider the effective date of any offset due to Claimant's receipt of pension benefits." (Board's Order dated April 8, 2015.) However, as WCJ Torrey noted, the parties already agreed that the date of the Employer's pension offset would be April 25, 2005.

## C.

On remand, the matter was reassigned to WCJ Torrey, who found that Claimant failed to demonstrate that she provided notice within 21 days of discovering that her cancer was possibly related to occupational exposure. As he reasoned:

> In the present case, claimant, a sophisticated individual, was advised by her union that the workers' compensation law had been changed so that **her cancer was presumed to be work-related**. . . . That expert advice awakened in her, at once, the idea of exploring whether or not her occupational exposure resulted in her breast cancer. She was not left to "sort through her many symptoms unassisted and essentially diagnose herself," [*Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 771 A.2d 1246, 1252 (Pa. 2001),] but instead had hard advice about the new law and her rights and (presumably) the need to act to enforce same.
>
> And so she did, within 120 days – but unfortunately she is unable to say whether her diligence was so exceptional that she acted within 21 days. She cannot remember, and apparently she no longer possesses the union's letter, so that her memory might be refreshed or restored. Such a showing, however, was part of her burden if she wishes [total temporary disability] benefits retroactive to 2004.

(WCJ Torrey's Decision at 9) (emphasis in original). WCJ Torrey awarded Claimant benefits as of September 23, 2011 – the date she filed her claim petition.

Employer appealed and the Board reversed in part, determining that the notice period only began once Claimant received the medical report because "mere suspicion, or even certain knowledge of disease or disability, standing alone,

does not trigger the notice period." (Board's Decision dated December 8, 2017 at 5) (citing *Carrier Coal Enterprises v. Workmen's Compensation Appeal Board (Balla)*, 544 A.2d 1111 (Pa. Cmwlth. 1988)). Accordingly, the Board concluded that the "21-day and 120-day periods in Section 311 [of the Act] did not begin to run until Claimant had [Dr. Francis's February 24, 2012 medical] report." (Board's Decision dated December 8, 2017 at 5.) Employer then filed this petition for review.[8]

## II.

On appeal, the parties do not dispute that Claimant suffered a compensable injury and timely filed her claim petition. The only disagreement is whether Claimant filed her claim petition within 21 days of knowing that her cancer was possibly work-related, thereby entitling her to compensation from the date of disability. In other words, the issue before us is not whether Claimant is entitled to benefits, but rather the date from which she is entitled to receive those benefits.

## A.

Under the Act, notice is a prerequisite for receiving workers' compensation benefits, and the claimant bears the burden of demonstrating that proper notice was given. *Gentex Corporation v. Workers' Compensation Appeal*

---

[8] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact were supported by substantial evidence. *Repash v. Workers' Compensation Appeal Board (City of Philadelphia)*, 961 A.2d 227 (Pa. Cmwlth. 2008).

*Board (Morack)*, 23 A.3d 528, 528 (Pa. 2011). What constitutes adequate notice is a fact-intensive inquiry, taking into consideration the totality of the circumstances. *Id.* at 537. Whether an employee has given proper notice to her employer is a mixed question of fact and law. *Id.* at 534.

Sections 311 and 312 of the Act, 77 P.S. §§ 631 & 632, provide when and what type of notice a claimant must give an employer in order to perfect her claim. Section 311 sets forth the notice required to be given by an employee to an employer:

> Unless the employer shall have knowledge of the occurrence of the injury or unless the employe or someone in his behalf or some of the dependents or someone in their behalf shall give notice thereof to the employer **within twenty-one days** after the injury, no compensation shall be due until such notice be given, and unless such notice be given **within one hundred and twenty days** after the occurrence of the injury, no compensation shall be allowed. **However**, in cases of injury resulting from ionizing radiation or **any other cause in which the nature of the injury or its relationship to the employment is not known to the employe**, the time for giving notice **shall not begin to run until the employe knows or by the exercise of reasonable diligence should know of the existence of the injury and its possible relationship to his employment**. The term 'injury' in this section means in cases of occupational disease, disability resulting from occupational disease.

77 P.S. § 631 (emphasis added). Section 312 sets forth the content of that notice:

> The notice referred to in section three hundred and eleven shall inform the employer that a certain employe received

9

an injury, described in ordinary language, in the course of his employment or about a specified time, at or near a place specified.

77 P.S. § 632.

We have interpreted Section 311 as establishing a scheme where if the claimant gives notice "within 21 days of the date he knew or should have known of the injury and its relationship to his employment, compensation is payable from the date of disability. If, however, the claimant gives notice after the 21 days has elapsed but within 120 days of the date he knew or should have known of his injury, compensation is then payable from the date that notice was given." *Martincic v. Workmen's Compensation Appeal Board (Greater Pittsburgh International Airport)*, 529 A.2d 600, 602 (Pa. Cmwlth. 1987) (citing *Culp Industrial Insulation v. Workmen's Compensation Appeal Board (Linker)*, 426 A.2d 1263 (Pa. Cmwlth. 1981)).

In an occupational disease case, the notice period begins to run against a claimant when she has "(1) knowledge or constructive knowledge (2) of a disability (3) which exists, (4) which results from an occupational disease, and (5) which has a **possible** relationship to her employment. . . ." *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Wojtaszek)*, 413 A.2d 768, 770 (Pa. Cmwlth. 1980) (quoting *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Zacek)*, 407 A.2d 117, 118 (Pa. Cmwlth. 1979)) (emphasis added).

**B.**

Employer contends that the Board erred when reversing WCJ Torrey's determination that Claimant became sufficiently aware that her cancer was possibly work-related after receiving the Union Letter. A brief survey of the case law is necessary.

**1.**

In *Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 771 A.2d 1246 (Pa. 2001), our Supreme Court directly addressed the question of when the notice period begins to run. There, a claimant who had been a smoker for more than 40 years became a tester of a plastic product in 1988 and began to experience throat and lung problems. Although the claimant suspected that her health problems were due to inhaling fumes while working, she lacked proof and did not advise her employer of her belief. In November 1992, she was admitted to a hospital and was told that she had emphysema but was not told of its cause. Upon discharge, she searched for a doctor with knowledge of the chemicals in her work environment, but did not locate one until August 1993. That doctor advised her that exposure to chemicals at her work had exacerbated her emphysema and the claimant notified her employer the same month. Only then did the claimant file a claim petition.

Ultimately, our Supreme Court held that the claimant timely provided her employer notice because, prior to her doctor informing her, she did not know or have reason to know that her illness had been aggravated by work exposures. As the Court reasoned, the discovery rule "calls for more than an employee's

suspicion, intuition or belief; by its terms, the statute's notice period is triggered only by an employee's knowledge that she is injured and that her injury is possibly related to her job." *Sell*, 771 A.2d at 1253.

> The substantial evidence relating to the course taken by [the claimant's] disease provides ample support for the WCJ's determination that **without the benefit of medical consultation**, [the claimant] neither knew, nor should have known, that from among all her respiratory difficulties, there was a compensable injury. Moreover, the WCJ's finding reflects the view that **[the claimant] should not have been expected to sort through her many symptoms unassisted and essentially diagnose herself**. Based on the evidence regarding the injury with which [the claimant] was dealing, we can only agree.
>
> * * *
>
> When read in its entirety, the record establishes that at the time [the claimant's] emphysema was diagnosed, she was a layperson who thought that the formaldehyde in her work environment was harmful. **Aware that she held an uninformed view, [the claimant] sought out an expert who could tell her whether she was correct to think so**. In the exercise of reasonable diligence, and with notable persistence, [the claimant] located Dr. Cohn, a physician who confirmed her suspicions about formaldehyde and informed her on August 31, 1993 that exposure to the chemical exacerbated her emphysema. **As the WCJ found, it was at this point, with a medical diagnosis in hand, that [the claimant] had the knowledge that [Section 311] requires**. . . .

*Id.* at 1252-53 (emphasis added).

In *The Bullen Companies v. Workers' Compensation Appeal Board (Hausmann)*, 960 A.2d 488 (Pa. Cmwlth. 2008), the claimant worked for 17 years in a plant that manufactured cleaning products and was exposed to ethylene butyl glycol ether and other solvents. In late 2001, he began to experience frequent urination and sought medical attention. He stopped working in June 2002 when the employer closed the plant, and the next month he was referred to a kidney specialist who recommended a kidney transplant. Suspecting that his kidney ailment was related to workplace exposures, the claimant retained an attorney to secure a medical expert. Two years later, in July 2004, the claimant notified the employer that he sustained a work injury and filed a claim petition seeking benefits for an occupational disease, even though his attorney had not yet secured a medical expert. More than six months later, in March 2005, the claimant finally received medical confirmation from a doctor stating that his kidney problem was work-related.

On appeal, this Court found that the claimant provided timely notice, despite the fact that he filed the claim prior to receiving medical confirmation that his disease was job related. As we reasoned, "[the claimant] did not know that his disease was job related **until** [the doctor] so advised him in March 2005. [The employer's] contention to the contrary is based solely on [the claimant's] testimony that he suspected in 2002 that his kidney problem was related to his job. As the Supreme Court held in *Sell*, however, Section 311's discovery rule requires more than an employee's suspicion, intuition or belief." *Hausmann*, 960 A.2d at 493 (emphasis added).

Finally, in *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233 (Pa. Cmwlth. 2013), the claimant was a commercial drywall carpenter who aggravated a pre-existing knee injury while working for his employer. Although the claimant suspected that his condition could be related to work, his treating physician never informed him of any causal connection. Approximately 18 months after he stopped working for that employer, the claimant was informed by a doctor for the first time that his knee injury was work-related. He filed a claim petition within 120 days of that doctor's visit.

On appeal, this Court affirmed the WCJ's finding that the claimant provided timely notice. As we reasoned, "although [the claimant] may have suspected a possible relationship between his knee condition and employment, he did not possess the requisite knowledge **until** his [p]hysician diagnosed him with chronic repetitive work-related chondral wear in the patellofemoral joint on his right knee in March 2009." *Id.* at 1241 (emphasis added).

**2.**

What these cases demonstrate is that for the clock to start on Section 311's notice period, a layperson-claimant must have more than just an uninformed suspicion about her disease's work-relatedness. In other words, a claimant does not "know" of the possible relationship between a disease and work until she is so informed by a medical expert. To hold otherwise would require a claimant to "sort through her many symptoms unassisted and essentially diagnose herself." *Sell*, 771 A.2d at 1252.

14

In this matter, Claimant obviously did not obtain medical confirmation of the relationship between her cancer and her work until after filing the claim petition. Notwithstanding, Employer contends that the 21-day notice period should have commenced when Claimant received the Union Letter because that letter is what ultimately compelled Claimant to seek counsel and file her claim petition. Essentially, Employer is asking this Court to use Act 46 to impute on Claimant actual knowledge that her injury could possibly be work-related. We rejected a similar request in *City of Erie v. Workmen's Compensation Appeal Board (Shannon)*, 607 A.2d 327 (Pa. Cmwlth. 1992), *aff'd sub nom. Shannon v. City of Erie*, 631 A.2d 595 (Pa. 1993).

In *Shannon*, a claimant that was employed as a firefighter for 30 years suffered a heart attack while at home and was disabled ever since. While he never filed an incident report with the employer stating that he suffered a heart attack, there is no dispute that the employer was aware claimant had suffered a heart attack. For example, the employer received a note from his doctor, his sister called employer informing it that claimant was sick, high-ranking fire department officials had knowledge of claimant's heart attack, and the claimant filed a claim petition for sick and accident benefits. Unfortunately, none of those contacts informed the employer specifically that the claimant believed his heart attack was work-related.

Similar to Employer's contention in this appeal, the firefighter-claimant argued that the presumption afforded to him imputed on the employer

actual knowledge that his known injuries were work-related. This Court wholly rejected that contention, explaining:

> However, the presumption provided in Section 301(e) [of the Act] was clearly intended to give claimants in specific occupations **an evidentiary advantage in establishing one of the elements necessary to support an award** (*i.e.*, the causal link between his injury and his employment), **not to circumvent or replace the notice provisions of Section 311**. *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.*, [] 525 A.2d 1204 ([Pa.] 1987). Therefore, although claimant would be entitled to a presumption that his heart attack was caused by his work for the purpose of supporting his claim, he is not entitled to such a presumption **for the purpose of imputing actual knowledge on employer**. Because claimant's suggested extension of the presumption provided by Section 301(e) is not supported by caselaw or the Act, we conclude employer did not have actual knowledge that claimant had suffered a compensable injury.

*Shannon*, 607 A.2d at 331-32 (emphasis added); *see also Pawlosky*, 525 A.2d at 1211 (noting that the claimant seeking to recover for an occupational disease is "given a **procedural or evidentiary advantage**" that, if established, entitled him "to a non-conclusive presumption that his occupational disease arose out of and in the course of his employment") (emphasis added).

Correspondingly, in this case, Employer knew of Claimant's cancer since 2004 and (just like Claimant) knows of the presumption afforded to firefighter-claimants under Act 46. However, as this Court held in *Shannon*, knowledge of Act 46's effect does not perfect notice onto Employer because

16

Section 311 requires **actual** knowledge of an injury's work-relatedness. For the same reason, Claimant, learning of Act 46's effect, does not perfect Section 311's requirement that she actually knows of the possible relationship between her injury and her work. All the presumption does is give a claimant an evidentiary/procedural advantage; it does not impute knowledge to a claimant that her cancer was caused by exposure and not due to other risk factors. That only occurs when a claimant receives notice of that nexus from a medical doctor.

## C.

Although Claimant's knowledge of the firefighter-cancer presumption does not, in itself, commence Section 311's notice period, that does not mean that she could sit on her rights indefinitely. The undisputed facts make clear that Claimant's receipt of the Union Letter "awakened in her, at once, the idea of exploring whether or not her occupational exposure resulted in her breast cancer. . . . And so she did, within 120 days. . . ." (WCJ Torrey's Decision at 9.) Clearly, because the Union Letter awakened in Claimant the need to promptly investigate the cause of her injury, she had to abide by Section 311's mandate that she exercise "reasonable diligence" to become aware of "the existence of the injury and its possible relationship to [her] employment." Section 311 of the Act, 77 P.S. § 631. Had she not, her claim would have become barred. *See, e.g.*, *Allegheny Ludlum Corp. v. Workers' Compensation Appeal Board (Holmes)*, 998 A.2d 1030, 1034 (Pa. Cmwlth. 2010) (holding that a claimant did not exercise reasonable diligence where she was told to "get another job" by her doctor and noticed a connection to her work and injury, but did not file a claim petition until two decades later).

17

Here, Employer does not dispute that Claimant acted with reasonable diligence when she obtained counsel and filed her claim petition in the months following receipt of the Union Letter, prior to receiving medical confirmation of the relationship between her cancer and her work.

Accordingly, because Claimant's receipt of the Union Letter did not commence Section 311's 21-day notice period and she acted with reasonable diligence in filing her claim petition shortly thereafter, we affirm the Board's order granting Claimant benefits retroactive to September 9, 2004.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh and UPMC       :
Benefit Management Services, Inc.,   :
                  Petitioners     :
                               :
            v.              : No. 29 C.D. 2018
                               :
Workers' Compensation Appeal    :
Board (Flaherty),              :
                  Respondent    :

# **O R D E R**

AND NOW, this 1ˢᵗ day of June, 2018, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

_____
DAN PELLEGRINI, Senior Judge