IN THE COMMONWEALTH COURT OF PENNSYLVANIA

West Conshohocken Borough,  :
                 Petitioner  :
                             :
        v.                   : No.  1382 C.D. 2022
                             : Argued:  June 5, 2024
David Markland (Workers'     :
Compensation Appeal Board),  :
                 Respondent  :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                            FILED:  October 10, 2024


        West Conshohocken Borough (Employer) petitions for review of the
November 18, 2022 opinion and order (Order) of the Workers' Compensation
Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ)
May 2, 2022 decision and order (Decision) granting the Claim Petition that David

Markland (Claimant) filed under the Workers' Compensation Act (Act).[1] After careful review, we affirm.

## BACKGROUND

On December 27, 2019, Claimant filed a Claim Petition based upon an occupational disease.[2] Claimant verified the Claim Petition was for "an Act 46 (firefighter/cancer) claim" and alleged as of August 23, 2019, he sustained "[c]olon cancer and retroperitoneal lipomatus cancer" of the left kidney and right kidney. Certified Record (C.R.), Item No. 2 at 1. Claimant listed his last day of work, and of exposure, as September 1, 2018, and his "date of injury/onset of disease" as August 23, 2019. *Id.* at 1-2. Claimant alleged the injury occurred through his "[e]xposure to IARC group one carcinogens as a firefighter for more than 40 years." *Id.* at 1.

In his Claim Petition, Claimant listed the date of notice to Employer as August 23, 2019. *Id.* Claimant indicated he gave notice "verbally after speaking with counsel prior to any physician advising that his cancers were due to his fire service." *Id.* Regarding notice, Claimant detailed further he "first learned of potential claims from a physician[/]expert after receiving [a physician's] opinion just before filing." *Id.* Claimant sought ongoing full disability beginning September 1, 2018. *Id.* at 3.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] Under Section 301(c)(2) of the Act, 77 P.S. § 411(2), the definition of "injury" includes "occupational disease" as defined by Section 108 of the Act, added by the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1. The Act of July 7, 2011, P.L. 251, No. 46 (Act 46), effective July 7, 2011, added Section 108(r) to the Act to expand the definition of "occupational disease" to include "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer [(IARC)]." 77 P.S. § 27.1(r).

On January 7, 2020, Employer filed an Answer to the Claim Petition denying all material allegations therein. In the Answer, Employer asserted the "statute of repose and statute of limitations," and the "notice provision of the Act," barred Claimant's claim. *Id.*, Item No. 4 at 2. Employer requested the Claim Petition be dismissed or disallowed. *Id.*

The WCJ received evidence and deposition testimony from Claimant and from Tee Guidotti, M.D., M.Ph. (Dr. Guidotti), Steven Lichtenstein, D.O. (Dr. Lichtenstein), and Carlos Torres, M.D. (Dr. Torres). The WCJ found Claimant established an entitlement to benefits "pursuant to the occupational disease provisions of the Act, specifically Sections 301(c)(2), 108(r), and 301(f)[, 77 P.S. §§ 411(2), 27.1(r), and 414 (added by Act 46)]." WCJ Dec., 5/2/22 (WCJ Dec.), Conclusions of Law (C.L.), ¶ 2. The WCJ also found Claimant was entitled to benefits under Section 301(c)(1) of the Act because he established his cancers were injuries. *Id.* The WCJ granted Claimant's Claim Petition. Employer appealed the decision to the Board, and the Board affirmed the WCJ in its Order. Employer now seeks review in this Court.

Employer raises three issues to support reversing the Board. First, Employer claims the Board should have reversed the WCJ's award for a lack of findings of fact regarding notice under Section 311 of the Act, 77 P.S. § 631. Employer's Br. at 4.[3] Next, Employer asserts the Board erred by affirming the WCJ's finding that Claimant had cancer and was entitled to benefits under Section 108(r) of the Act. *Id.* Finally, Employer contends the Board should have reversed the WCJ's decision where Claimant had no viable Section 301(c)(1) claim because he filed his Claim Petition more than three years after his date of diagnosis. *Id.*

---

[3] Because Employer failed to paginate its brief, we have provided page numbers for ease of reference.

**DISCUSSION**

This Court reviews workers' compensation orders for violations of a party's constitutional rights, violations of agency practice and procedure, and other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the Board's decision. *Id.* The WCJ is the ultimate fact finder in workers' compensation cases and is entitled to weigh the evidence and assess credibility of witnesses. *Montano v. Advance Stores Co., Inc. (Workers' Comp. Appeal Bd.)*, 278 A.3d 969, 978 n.4 (Pa. Cmwlth. 2022) (citing *Sharkey v. Workers' Comp. Appeal Bd. (Fed. Express)*, 786 A.2d 1035, 1038 (Pa. Cmwlth. 2001)). In reviewing issues concerning the Act, we are mindful the Act is remedial in nature and its purpose is to benefit the workers of the Commonwealth. *Tooey v. AK Steel Corp.*, 81 A.3d 851, 858 (Pa. 2013). Accordingly, we construe the Act liberally to effectuate its humanitarian objectives, and we resolve borderline interpretations in the injured party's favor. *Id.* (citation omitted). With these guidelines in mind, we review Employer's issues on appeal, although not in the order Employer presented them.

**Timeliness of Notice**

We first address Employer's assertion Claimant did not provide the timely notice required under Section 311 of the Act. Employer contends Claimant became aware of his injury and its relationship to his employment in June 2019, when he spoke with a fellow firefighter about the Act 46 cancer presumption. Employer's Br. at 8-9. By providing notice on August 23, 2019, Employer alleges Claimant missed the 21-day window and, instead, provided notice within 120 days. *Id.*

4

Therefore, Employer asserts Claimant's benefits should begin on the date of his notice, August 23, 2019. *Id.*

In order to receive workers' compensation benefits, a claimant bears the burden of demonstrating he provided proper notice under the Act. *Gentex Corp. v. Workers' Comp. Appeal Bd. (Morack)*, 23 A.3d 528, 528 (Pa. 2011). To determine whether a claimant provided adequate notice, the court must conduct a fact-intensive inquiry into the totality of the circumstances. *Id.* at 537. Whether a claimant provided his employer proper notice is a mixed question of fact and law. *Id.* at 534.

Section 311 of the Act requires a claimant prove he provided notice within 21 days of either the date of injury, or in the case of an occupational disease, the date which the claimant "knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment." 77 P.S. § 631. The "reasonable diligence" a claimant must exercise under the Act requires the claimant put forth "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." *E. Hempfield Twp. v. Workers' Comp. Appeal Bd. (Stahl)*, 189 A.3d 1114, 1116 (Pa. Cmwlth. 2018). Section 311 of the Act further provides if a claimant fails to give notice within 21 days, "no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed." 77 P.S. § 631. In *City of Pittsburgh v. Workers' Compensation Appeal Board (Flaherty)*, 187 A.3d 1061, 1066-67 (Pa. Cmwlth. 2018), we explained:

> We have interpreted Section 311 as establishing a scheme where if the claimant gives notice within 21 days of the date he knew or should have known of the injury and its relationship to his employment, compensation is payable from the date of disability. If, however, the

5

claimant gives notice after the 21 days has elapsed but within 120 days of the date he knew or should have known of his injury, compensation is then payable from the date that notice was given.

(Internal quotation and citations omitted.)

In an occupational disease case, the notice period begins to run against a claimant when he has "(1) knowledge or constructive knowledge (2) of a disability (3) which exists, (4) which results from an occupational disease, and (5) which has a possible relationship to [his] employment." *Flaherty*, 187 A.3d at 1067 (citations omitted).

Similar to the facts of this case, *Flaherty* involved a firefighter who suffered from breast cancer. The firefighter received a letter from her union informing her of the presumption of occupational exposure for firefighters with a cancer diagnosis. *Id.* at 1061. She consulted an attorney and filed a claim petition before she received a medical opinion of the causal relationship between her cancer and her work. *Id.* at 1064. This all occurred within four months. *Id.* at 1070. This Court determined the firefighter's receipt of the letter from the union did not impute knowledge her cancer was work related. *Id.* Rather, the letter was intended to give her an evidentiary advantage, not provide her actual knowledge of the injury's work-relatedness. *Id.* Accordingly, we determined she exercised reasonable diligence, and she properly received benefits from her last day of employment. *Id.* at 1063, 1070.

Here, the Board acknowledged the WCJ made no specific finding regarding notice. However, the Board noted the WCJ accepted Claimant's testimony. Claimant testified he learned of Act 46 after a discussion with a fellow firefighter in June 2019. On August 12, 2019, Claimant signed a fee agreement with counsel. On August 23, 2019, Claimant provided notice to Employer. It was not until Claimant reviewed Dr. Guidotti's December 27, 2019 report that Claimant definitively learned

6

of the causal connection between his firefighting and cancer. We reject Employer's argument that Claimant knew of his cancer's work-relatedness at the time he learned of Act 46 from a fellow firefighter. Like in *Flaherty*, that conversation did not impute actual knowledge to Claimant that his cancer was caused by exposure and not due to other risk factors. Claimant had actual knowledge of the nexus between firefighting and his cancer only after he reviewed Dr. Guidotti's report. Thus, the Board could not find "Claimant failed to act with reasonable diligence in attempting to discover the cause of his conditions." Bd. Op., 11/18/22, at 23. Therefore, the Board did not err by finding Claimant provided timely notice of an injury and its relationship to his employment and determining benefits began when he became disabled. 77 P.S. § 631.

### Timeliness of Claim

Next, we address Employer's assertion the award of benefits under Section 301(c)(1) of the Act was erroneous because Claimant did not make a timely claim for benefits under Section 315 of the Act, 77 P.S. § 602. To begin, Section 301(c)(1) of the Act provides:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury.

77 P.S. § 411(1). Section 315 of the Act states, in relevant part: "In cases of personal injury all claims for compensation shall be forever barred, . . . unless within three years after the injury, one of the parties shall have filed a petition as provided in

article four hereof." 77 P.S. § 602. In cases of occupational disease, the term "injury" refers to disability resulting from occupational disease. *Id.*

Here, the Board acknowledged the WCJ did not make a specific finding on this issue. However, the Board noted Employer's acknowledgment that the date of injury is synonymous with the date of disability. The WCJ found Claimant credibly testified he began dialysis in July 2019, and, at that time, Claimant left work and began receiving Social Security Disability benefits. Thus, Claimant's date of disability was July 2019. Claimant filed his Claim Petition in December 2019, within three years from his date of injury. Therefore, the Board did not err by concluding Claimant timely filed his Claim Petition.

## Cancer

Finally, Employer argues the Board erred by failing to reverse the WCJ's award based upon Claimant's cancer under Section 108(r) of the Act. Employer alleges the record evidence established Claimant did not have cancer. Employer's Br. at 11-12, 15-22. Employer asserts the medical experts agree "Claimant did not have colon cancer" and medical experts on both sides presented evidence Claimant's tumor was "a benign growth of fat cells that is by definition not a malignant condition." Employer's Petition for Rev. ¶ 5. In response, Claimant asserts the record evidence the WCJ found credible supports the WCJ's findings that Claimant had colon cancer and soft tissue sarcoma, including his atypical lipomatous tumor (ALT)/well differentiated liposarcoma (WDL), which are cancers caused by exposure to IARC Group I carcinogens. Claimant's Br. at 20.

On July 7, 2011, Act 46 added Section 108(r) to the Act, which defines the term occupational disease to include, *inter alia*, "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen [that] is recognized as a Group 1

8

carcinogen by the [IARC]." 77 P.S. § 27.1(r). This section "embodies a legislative acknowledgment that firefighting is a dangerous occupation that routinely exposes firefighters to Group 1 carcinogens that are known to cause various types of cancers." *City of Phila. v. Healey (Workers' Comp. Appeal Bd.)*, 297 A.3d 872, 878 (Pa. Cmwlth. 2023).

To provide compensation to a claimant, "a WCJ and the Board are authorized by the Act to determine whether or not [a claimant] who alleges that he was injured during the course of his employment is entitled to compensation." *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, 860 A.2d 25, 30 (Pa. 2004). In doing so, the WCJ has "exclusive authority to act as fact finder, determine credibility of witnesses, and weigh the evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014) (citation omitted). We will not disturb a WCJ's findings on appeal, so long as those findings are supported by substantial, competent evidence. *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018) (quoting *Stepp,* 99 A.3d at 601 n.6). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *3D Trucking Co., Inc. v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (citation omitted). In performing a substantial analysis test, this Court views the evidence "in a light most favorable to the party who prevailed before the factfinder. Moreover, we . . . draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party." *Id.*

Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. *Pa. Uninsured Emps. Guar. Fund v. Workers' Comp.*

*Appeal Bd. (Lyle)*, 91 A.3d 297 (Pa. Cmwlth. 2014) (citation omitted). Additionally, "Section 422(a) of the Act, 77 P.S. § 834, does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Id.* (internal citation and brackets omitted). This Court has explained:

> [I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence.

*Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.3d 1095, 1101 (Pa. Cmwlth. 2007) (citation and quotation marks omitted).

Here, Employer challenges the WCJ's finding that Claimant had cancer. The WCJ found Claimant was diagnosed with "two different cancers. He was diagnosed with colon cancer in March 2014 and retroperitoneal liposarcoma in November 2015." WCJ Dec., Findings of Fact (F.F.), ¶ 1.e. First, we consider whether the WCJ's finding that Claimant had cancer in the form of an ALT/WDL soft tissue sarcoma is supported by substantial evidence.

A review of the record reveals Claimant was diagnosed with ALT/WDL at Fox Chase Cancer Center. Reproduced Record (R.R.) at 349-50. While the medical experts disputed whether Claimant's ALT/WDL was cancer, the WCJ accepted the testimony and opinions of Dr. Guidotti as fact. WCJ Dec., F.F., ¶ 8. The WCJ found Dr. Guidotti's testimony and opinions to be "clear, persuasive, and supported." *Id.* The WCJ noted Dr. Guidotti is an expert in occupational and environmental medicine, and outlined Dr. Guidotti's qualifications as follows:

He is Board-Certified in Internal Medicine, Pulmonary Medicine, and Occupational Medicine in the United States and Canada. He is also a Diplomate of the American Board of Toxicology and holds the Qualified Environmental Professional credential with a specialization in air quality from the Institute for Professional Environmental Practice. He is retired from the position of Professor of Occupational and Environmental Medicine at the George Washington University Medical Center, where he was also Chair of the Department of Environmental and Occupational Health of the School of Public Health and Health Services and School of Medicine and Health Sciences. He has conducted research in toxicology and epidemiology applied to the problems of occupational and environmental exposure and health outcomes. He has engaged in research on the occupational health risks of firefighters since before 1985 and has written many articles and edited a book on the topic. He has been called to testify by insurance companies, defendants, including the City of Philadelphia, and employees. He uses his medical education, M.Ph., and toxicological training to assess these cases.

*Id.* ¶ 2.a.

Regarding Claimant's ALT/WDL soft tissue sarcoma diagnosis, Dr. Guidotti explained ALT is "a term of art . . . not just a description of the cancer." R.R. at 36. Dr. Guidotti advised Claimant's tumor was a "sarcoma" even though it did not behave like a typical, "very aggressive" or "rapidly invasive" sarcoma. *Id.* at 34-35. When asked whether a sarcoma is a cancer, Dr. Guidotti answered, "Yes." *Id.* at 62. Dr. Guidotti described Claimant's ALT as a "quite unusual cancer" and a "rare cancer." *Id.* at 33, 57. Dr. Guidotti expressed Claimant's ALT was "a really massive cancer" and that it was "silent because it was hidden behind the lining of the abdominal wall." *Id.* at 32. Throughout his testimony, Dr. Guidotti referred to Claimant's tumor as a cancer, and advised "it's not a cancer the way we normally think of because it's extremely low grade." *Id.* at 33. Ultimately, Dr. Guidotti testified that his opinion, within a reasonable degree of medical certainty, was that Claimant's ALT/WDL soft

11

tissue sarcoma was a cancer, and that his fire service exposures were a substantial contributing factor to his risk of developing a soft tissue sarcoma. *Id.* at 62.

The record, specifically Dr. Guidotti's testimony, contains evidence to support the WCJ's finding Claimant's ALT/WDL soft tissue sarcoma was cancer. While evidence exists in the record indicating Claimant's condition was not cancer, including the testimony of Dr. Torres who opined Claimant's ALT/WDL was not malignant or cancerous, *see id.* at 64-66, it is "irrelevant whether the record contains evidence to support findings other than those made by the WCJ," as our "critical inquiry is whether there is evidence to support the findings actually made." *See Lahr Mech.*, 933 A.3d at 1101. The resolution of conflicting medical opinions is within the province of the WCJ. *Joy Glo., Inc. v. Workers' Comp. Appeal Bd. (Hogue)*, 876 A.2d 1098, 1103 (Pa. Cmwlth. 2005).

Here, Dr. Guidotti's testimony and Claimant's Fox Chase Cancer Center medical records support the WCJ's finding that Claimant had an ALT/WDL soft tissue sarcoma, which is cancer. Additionally, consistent with Dr. Guidotti's testimony, the National Cancer Institute defines "liposarcoma" as "a rare type of **cancer** that begins in fat cells." https://www.cancer.gov/search/results?swKeyword=liposarcoma (last visited October 9, 2024) (emphasis added). Because the record contains such evidence, and because we give Claimant, as the prevailing party, the benefit of all inferences we can logically and reasonably draw from the evidence, we do not overturn the WCJ's finding that Claimant's ALT/WDL soft tissue sarcoma is cancer.

Having concluded the WCJ's finding that Claimant had cancer in the form of an ALT/WDL soft tissue sarcoma, was supported by substantial evidence, we must now consider whether the WCJ and Board erred in concluding Claimant met his

burden in his Claim Petition. The WCJ found Dr. Guidotti referenced literature from the IARC recognizing dioxin as an IARC Group I carcinogen, which can cause ALT/WDL soft tissue sarcoma, and Employer's medical experts did not contest this. WCJ Dec., C.L., ¶ 3. Rather, they focused their testimony on whether Claimant had cancer. *Id.* As such, the WCJ found Claimant established an entitlement to the rebuttable presumption of causation for his cancer under Section 301(f) of the Act[4] with uncontested evidence based on his years of fire service and direct exposures to carcinogens, including dioxin. *Id.* ¶ 4. Employer failed to establish a specific, non-firefighting cause of Claimant's cancer necessary to rebut the presumption of

---

[4] Section 301(f) of the Act sets forth three requirements a firefighter/claimant must show to establish a claim under Section 108(r) of the Act:

> (i) the claimant worked for four or more years in continuous firefighting duties, (ii) the claimant had direct exposure to a carcinogen classified as Group 1 by the IARC, and (iii) the claimant passed a physical examination prior to engaging in firefighting duties that did not reveal evidence of cancer. 77 P.S. § 414.

*Fargo v. Workers' Comp. Appeal Bd. (City of Phila.)*, 148 A.3d 514, 516 (Pa. Cmwlth. 2016). Once the claimant demonstrates he has met these requirements, he is entitled to the rebuttable presumption of compensability set forth in Section 301(f) of the Act. *Id.* To rebut this presumption, an employer must present evidence showing that "the firefighter's cancer was not caused by the occupation of firefighting." 77 P.S. § 414. An employer may sustain its burden by demonstrating:

> (1) the specific causative agent of claimant's cancer, and (2) exposure to that causative agent did not occur as a result of his or her employment as a firefighter. In other words, the language of Section 301(f) requires the employer to produce a medical opinion regarding the specific, non-firefighting related cause of [a] claimant's cancer.

*City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 209 (Pa. 2018).

compensability applicable to this claim. *Id.* ¶ 5. The WCJ's findings are supported by the record. Thus, the WCJ did not err in finding Claimant was entitled to benefits.[5]

Accordingly, we affirm the Board's Order.

_____
STACY WALLACE, Judge

Judge Ceisler dissents and wishes to be so noted.
Judge Dumas did not participate in the decision of this case.

---

[5] Because we determine substantial evidence exists in the record to support the WCJ's finding that Claimant was entitled to benefits based on his ALT/WDL soft tissue sarcoma, we need not address Employer's challenge to the WCJ's finding Claimant had colon cancer entitling him to benefits.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

West Conshohocken Borough,  :
                                 Petitioner  :
                                             :
        v.                        : No.  1382 C.D. 2022
                                             :
David Markland (Workers'         :
Compensation Appeal Board),      :
                                 Respondent  :

# **O R D E R**

    **AND NOW**, this 10th day of October 2024, the November 18, 2022 order of the Workers' Compensation Appeal Board is **AFFIRMED**.

                                      _____
                                      STACY WALLACE, Judge

West Conshohocken Borough,       :
           Petitioner         :
                              :
       v.                     :
                              :
David Markland (Workers'        :
Compensation Appeal Board),    :    No. 1382 C.D. 2022
           Respondent       :    Argued:  June 5, 2024


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

CONCURRING/DISSENTING OPINION
BY JUDGE COVEY                          FILED:  October 10, 2024

        I agree with the Majority's conclusions regarding David Markland's (Claimant) claim timeliness and cancer diagnoses, that Claimant acted diligently, and that the Workers' Compensation (WC) Judge (WCJ) made sufficient findings on which the WC Appeal Board (Board) could determine the timeliness of the notice.  However, I respectfully disagree with the Majority's affirmance of the Board's conclusion that Claimant's WC benefits were payable from July 2019.

        Section 311 of the WC Act (Act)[1] states:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe . . . shall give notice thereof to the employer within [21] days after the injury, no

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

compensation shall be due until such notice be given, and, unless such notice be given within [120] days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from . . . any [] cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.[2]

77 P.S. § 631.

This Court has interpreted:

[U]nder the provisions of Section 311 [of the Act], where the claimant gives notice of his disability from disease within 21 days of the date he knew or should have known of the injury and its relationship to its employment, compensation is payable from the date of disability. If, however, the claimant gives notice after the 21 days has elapsed but within 120 days of the date he knew or should have known of his injury, compensation is then payable from the date that notice was given.

*Martincic v. Workmen's Comp. Appeal Bd. (Greater Pittsburgh Int'l Airport)*, 529 A.2d 600, 602 (Pa. Cmwlth. 1987); *see also City of Pittsburgh v. Workers' Comp. Appeal Bd. (Flaherty)*, 187 A.3d 1061 (Pa. Cmwlth. 2018).

The discovery rule set forth in Section 311 of the Act allows "employees who suffer an injury that is not readily and immediately ascertainable [to] have the same rights under the Act as those employees who sustain an injury that is, as long as they proceed with reasonable diligence." *Sell* [*v. Workers' Comp. Appeal Bd. (LNP Eng'g)*], 771 A.2d [1246,] 1251 [(Pa. 2001)]. The standard of reasonable diligence requires "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." *Id.* (quoting *Cochran v. GAF Corp.*, . . . 666 A.2d 245, 249 ([Pa.] 1995)).

---

[2] "Disability is the loss of earnings or earning power that is caused by a work-related injury." *Kurpiewski v. Workers' Comp. Appeal Bd. (Caretti, Inc.)*, 202 A.3d 870, 880 (Pa. Cmwlth. 2019).

> While reasonable diligence is an objective standard, "it is sufficiently flexible to take into account the different capacities people have to deal with the circumstances they confront." *Id.* In order to trigger the running of the 120-day period for notice under Section 311 of the Act, a claimant must have: (1) knowledge or constructive knowledge, (2) of a disability, (3) which exists, (4) which results from an occupational disease or injury, and (5) which has a possible relationship to the claimant's employment.

*Stahl v. Workers' Comp. Appeal Bd. (E. Hempfield Twp.)*, 242 A.3d 3, 11 (Pa. Cmwlth. 2020) (footnote omitted). "Notice of a work-related injury is a prerequisite to receiving [WC] benefits, and the claimant bears the burden of showing that proper notice was given."[3] *Id.*

The WCJ is the ultimate finder of fact. *See Dep't of Corr. - SCI Chester v. Faison (Workers' Comp. Appeal Bd.)*, 266 A.3d 714 (Pa. Cmwlth. 2021). On appeal, neither the Board nor this Court may reweigh the evidence, *see Sell*, and "[t]he WCJ's findings will not be disturbed if they are supported by substantial, competent evidence."[4] *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018) (quoting *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014)).

In the instant matter, substantial record evidence supported the WCJ's findings that Claimant's injury/disability date was July 2019,[5] that Claimant gave West

---

[3] "Whether a claimant provides proper notice of a work-related injury under Section 311 of the Act is a mixed question of law and fact." *Stahl*, 242 A.3d at 12 n.5.

[4] "Substantial evidence . . . [i]s such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Aqua Am., Inc. v. Workers' Comp. Appeal Bd. (Jeffers)*, 199 A.3d 482, 486 (Pa. Cmwlth. 2018) (quoting *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 943 (Pa. 2004)).

[5] The WCJ found that Claimant "retired because of the cancer affecting his kidneys in July 2019." WCJ Dec. at 5 (Finding of Fact (FOF) 1.j); *see also* WCJ Dec. at 17 (Claimant "was forced to retire . . . in July 2019. His disability was further confirmed by the award of Social Security Disability benefits as of July 2019." Conclusion of Law 7.).

Conshohocken Borough (Borough) notice thereof on August 23, 2019,[6] and that Tee Guidotti, M.D., M.Ph.'s (Dr. Guidotti) report definitively related Claimant's cancer to his volunteer fire service on December 27, 2019. Based on those factual findings, the WCJ granted the Claim Petition for WC benefits and ordered the Borough to pay Claimant wage loss benefits beginning in July 2019 and ongoing. On appeal to the Board, the Borough argued that because Claimant did not provide notice within the 21-day limitation period under Section 311 of the Act, Claimant's WC benefits were not payable until he gave the Borough notice on August 23, 2019. Notwithstanding, and without further discussion, the Board "reject[ed] [the Borough's] assertion that benefits could not begin until August 23, 2019[,] as opposed to the date Claimant became disabled due to his dialysis in mid-July 2019." Bd. Op. at 23. Accordingly, the Board affirmed the WCJ's decision that Claimant was entitled to WC benefits beginning in July 2019 and ongoing.

The Majority concludes: "It was not until Claimant reviewed Dr. Guidotti's December 27, 2019 report that Claimant definitively learned of the causal connection between his firefighting and cancer." *W. Conshohocken Borough v. Markland (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 1382 C.D. 2022, filed Oct. 10, 2024) (*Markland*), slip op. at 6. The Majority also declares: "Claimant had actual knowledge of the nexus between firefighting and his cancer only after he reviewed Dr. Guidotti's report." *Id*. at 7. This Court has held:

> While it is true that sufficient knowledge for the purposes of notice requires more than an employee's suspicion, to hold that the 120-day notice period can *only* begin once a claimant receives a physician's confirmation would be illogical. Such a holding would not only provide a claimant with a potentially unlimited timeframe in which to provide notice,

---

[6] Although the WCJ did not make any specific findings regarding the timeliness of Claimant's notice, the WCJ specifically found: "[Claimant] notified [the Borough's] then Fire Chief that the cancers were possibly related to his fire service on August 23, 2019." WCJ Dec. at 4-5 (FOF 1.g).

but it would also serve to nullify the reasonable diligence requirement of Section 311 of the Act. Had the General Assembly intended to require a physician's confirmation to serve as the start of the notice period, it could have included straightforward language in the Act to that effect.

*E. Hempfield Twp. v. Workers' Comp. Appeal Bd. (Stahl)*, 189 A.3d 1114, 1119 (Pa. Cmwlth. 2018). Rather,

> a determination of whether a claimant has satisfied the notice requirement set forth in Section 311 of the Act is fact specific and no one fact - including, but not limited to, the date on which a claimant obtains a medical report establishing a causal relationship between his injury and his job - is dispositive on this issue.

*Stahl*, 242 A.3d at 12.

The instant case does not involve a circumstance referenced in the latter part of Section 311 of the Act - that Claimant did not timely know of the nature of his cancers or their relationship to his volunteer fire service. *See* 77 P.S. § 631. Instead, the record evidence supports the WCJ's finding that Claimant was sufficiently aware that his disability was related to his volunteer fire service, and he notified the Borough thereof on August 23, 2019. The Borough did not dispute that finding, and neither the Board nor this Court may disturb it on appeal. *See Rogele, Inc*. Because August 23, 2019, was more than 21 days after Claimant became disabled in July 2019,[7] but still within 120 days thereof, pursuant to Section 311 of the Act, Claimant was entitled to benefits "from the date that notice was given[,]" *Martincic*, 529 A.2d at 602, on August 23, 2019 and ongoing. Thus, although the Board properly declared that Claimant timely notified the Borough within 120 days of being disabled by his injury, the Board erred by affirming the WCJ's conclusion that Claimant's WC benefits were payable

---

[7] Although the WCJ did not specify a date certain, it found that Claimant became disabled in July 2019. Even if Claimant's disability began on the last day of July (i.e., July 31, 2019), more than 21 days would have elapsed before August 23, 2019.

from July 2019 and ongoing. Accordingly, I would reverse that portion of the Board's order.

The Majority correctly observes that where, as here, notice is given between 21 days and 120 days after an injury, compensation is payable from when the claimant gives notice. *See Markland*, slip op. at 5. The Majority further accurately acknowledges the WCJ's undisputed finding that more than 21 days after his injury, "[o]n August 23, 2019, Claimant provided notice to Employer." *Id*. at 6. Notwithstanding, the Majority concludes that "the Board did not err by . . . determining [Claimant's] benefits began when he became disabled" in July 2019. *Id*. at 7. However, the Majority declares that "Claimant had actual knowledge of the nexus between firefighting and his cancer only after he reviewed Dr. Guidotti's [December 27, 2019] report." *Id*. By that declaration, the Majority appears to modify the notice date to December 27, 2019, which is contrary to the WCJ's finding and the Board's order, and renders Claimant ineligible for WC benefits under Section 311 of the Act because notice would have been given beyond the 120-day notice period. Accordingly, I depart from the Majority in this sole respect and would reverse that portion of the Board's order affirming the WCJ's conclusion that Claimant's WC benefits were payable from July 2019 and ongoing.

For the above-stated reasons, I concur in the Majority's opinion in all respects, except I dissent only to that part of the Majority's opinion as to when WC benefits are payable because it conflicts with the WCJ's finding of facts.

_____
ANNE E. COVEY, Judge